RALPH WILSON vs. DEPARTMENT OF SOCIAL SERVICES.

No. 05-P-316.

Bristol. November 2, 2005. - March 10, 2006.

Present: LENK, DREBEN, & GREEN, JJ.

*Department of Social Services. Child Abuse. Administrative Law,* Substantial evidence, Time of decision.

Substantial evidence supported the conclusion of the Department of Social Service (department) that there was reasonable cause to believe that the plaintiff, a public school teacher, physically abused an eighth grade student, and the department's determination that the child's injuries were sufficient to fall within its definition of "abuse" and "physical injury" was not arbitrary [744-747]; moreover, the plaintiff did not demonstrate that his substantial rights were prejudiced by the department's violation of its own mandatory regulations in failing to issue a decision within the specified time period [747-748].

Statement that any administrative agency intending to take action involving a person's liberty or property interest must afford such person adequate safeguards and may not rely automatically on another agency's decision that was based on the standard of "reasonable cause to believe" that child abuse or neglect has occurred. [748-749]

CIVIL ACTION commenced in the Superior Court Department on February 12, 2004.

The case was heard by *John P. Connor, Jr.,* J., on motions for judgment on the pleadings.

*Michael C. Donahue* for the plaintiff.

*Stephen W. Marshalek,* Assistant Attorney General, for Department of Social Services.

DREBEN, J. The plaintiff, a public school teacher, sought review (G. L. c. 30A, § 14) of a decision of an administrative hearing officer of the Department of Social Services (department) determining that there was reasonable cause to believe

that the plaintiff had physically abused an eighth grade student.[1] The plaintiff sought reversal of the decision and notification of the Department of Education and any certification agency that the decision was reversed as unsupported. On the parties' cross motions for judgment on the pleadings, a Superior Court judge affirmed the hearing officer's decision.

On appeal, the plaintiff claims that the injuries were de minimis and, in the circumstances, did not constitute abuse within the meaning of the department's regulations; that the decision was arbitrary and capricious; and that the department did not follow its time standards to the prejudice of the plaintiff. We are constrained to affirm.

1. *Prior proceedings, findings, and conclusions.* Following an incident at school on May 22, 2001, the mother of a thirteen year old special needs child filed a report pursuant to G. L. c. 119, § 51A (51A report),[2] alleging that the child had reported that his teacher, the plaintiff, had, during graphic arts class, grabbed him by the neck and that the child had three visible marks on his neck. Pursuant to c. 119, § 51B, the department undertook an investigation and evaluation of the report, an evaluation that under the statute had to be completed within ten calendar days.

The investigator interviewed the mother and the child, and spoke by telephone to the child's pediatrician's nurse. Although the investigator sought to interview the plaintiff and the principal of his school, she was unable to do so.[3] Because of the

---

[1]The term "abuse" is defined in the department's regulations as "the non-accidental commission of any act *by a caretaker* [including a school teacher] upon a child under age 18 which causes, or creates a substantial risk of physical or emotional injury" (emphasis in original). 110 Code Mass. Regs. § 2.00 (1996). "Physical injury" is defined as, inter alia, "(a) death; or (b) fracture of a bone, a subdural hematoma, burns, impairment of any organ, and any other such nontrivial injury; or (c) soft tissue swelling or skin bruising depending upon such factors as the child's age, circumstances under which the injury occurred, and the number and location of bruises . . . ." *Ibid.*

[2]General Laws c. 119, § 51A, as amended by St. 1993, c. 50, § 23, mandates certain professionals to report to the department if they "have reasonable cause to believe that a child under the age of eighteen years is suffering physical or emotional injury resulting from abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare." The statute permits reports by persons who are not mandated to make such reports.

[3]She left messages for the plaintiff at the school on May 31 and June 1,

ten-day time limitation, the investigator felt constrained to complete her investigation by June 1, 2001. She did not speak to the persons mentioned in her report other than the mother, child, and nurse, and did not see the classroom or the child's school disciplinary records.

After setting forth her findings, the investigator concluded in a written decision:

> "The reported allegation on physical abuse of 13 year old [child] by his teacher Ralph Wilson is supported. [The child] disclosed to his mother, school principal, Dr. and investigator that Mr. Wilson placed his hand around his neck with force causing injuries. Mother immediately took her son to be examined by his Dr. (Dr. Shapira) and he noted the injuries. Mother also filed a police report at which time pictures of the injuries were taken. Mr. Wilson also admitted in the presence of mother, [child], and the school principal, Mr. Jeffreys[,] that he placed his hand on [the child's] neck. Mr. Jeffreys again admitted to the knowledge of Mr. Wilson placing his hand on [the child's] neck at a meeting held at the School Department with the School Department Superintendent, Mr. Souza. [The child] is not at present risk as he is no longer in Mr. Wilson's class. Mother is following through with the criminal complaint against Mr. Wilson through the Police Department and Third District Court."[4]

Pursuant to 110 Code Mass. Regs. § 10.06(8) (2000), a hearing on the plaintiff's administrative appeal was held on August 15, 2001. The only witnesses were the investigator, her supervisor, and the plaintiff. The latter introduced documentary evidence consisting of photographs of the plaintiff's classroom, the child's significant disciplinary record, and the police report. Based primarily on the investigator's report and her testimony,

2001, and attempted to speak with the principal on June 1, 2001. The plaintiff, through the school secretary, informed the investigator on June 1, 2001, that he did not wish to speak with her without his attorney and his attorney was not available on that day. The school principal was not in on the day the investigator sought to speak with him.

[4]Subsequently, the hearing officer on the plaintiff's administrative appeal found that the mother filed the application for criminal complaint on May 24, 2001. On June 21, 2001, a hearing was held and it was determined that force was used but that it was reasonable for that activity. No criminal process issued.

the hearing officer, in a decision issued some two and one-half years after the hearing, affirmed the investigator's decision to support the report for physical abuse of the child. Her findings, mostly stated in chronological order, included the following.

The plaintiff, fifty-eight years old, had been teaching for twelve years without any prior instances of reported abuse of a child. At the time of the May 22, 2001 incident, the child was an eighth grade special needs student and was thirteen years old. From October 30, 2000, to May 22, 2001, the child exhibited behavioral problems with various teachers resulting in "detention and reprimands, e.g., disruptive in class, cutting 7th period, spitting, being disrespectful, and assaulting a student."

On May 22, 2001, the child was working on a computer and printed out a document. He crumpled the paper because it came out crooked and put it between his feet. He then picked up the paper with his feet and jumped up trying to get it in the recycling box. In the process, he kicked the copying machine by accident. The plaintiff became upset, came up behind him, grabbed him by the back and his neck, and yelled out, "Do you have $15,000 to pay for the machine?" The child said he did not, and the plaintiff let him go. The child went home crying and told his mother what had happened. She saw three red marks on his neck.

The next morning, the mother and the child went to school and met with the principal and the plaintiff. The latter at first denied doing anything other than placing his arm around the child's shoulders, but later acknowledged grabbing the child and demonstrated this by placing his hand around the child's neck. The mother and child then proceeded to the police station and spoke to an officer about the incident. The child told him that the plaintiff grabbed him by the neck, yelling at him. The officer observed three marks on the side of the child's neck. In his report, the officer indicated that the marks did not seem consistent with a hand around the neck; he found it "feasible" that the silver neck chain the child was wearing could have caused the marks. The hearing officer did "not credit" this opinion but rather believed the investigator's view that the injuries were not caused by the chain.

Later the same day (May 23) the police officer spoke to the

plaintiff, who denied grabbing the child by the neck. He claimed he only placed his hand on the child's back and said he was trying to prevent the child from further kicking and damaging the copying machine.

Also on May 23, the mother took the child to his pediatrician, who saw red abrasions of two and one-half inches on the right side of his neck and several pressure marks under the abrasions. The child was experiencing muscle stiffness and given a soft cervical collar and pain reliever (Tylenol). The child told his doctor that he was horsing around in class and the plaintiff grabbed him by the neck.

When she interviewed the mother and child on May 25, the investigator observed two linear marks over two inches in length on his neck. One was still red and very visible. The other was visible, but slightly faint. There was no broken skin and the child was not wearing a soft cervical collar when she saw him. The child told the investigator about the incident and was very polite and well mannered during the interview.

The plaintiff's classroom is a very busy place, full of work tables, computer stations, printers, and other equipment. The close quarters in areas of the classroom are such that the plaintiff cannot afford to have horseplay. After taking attendance, the plaintiff normally has every student give him a safety rule for his class, such as no horseplay, no jumping, and no teasing or aggravating the other students. "The [i]nvestigator did not get the impression from her investigation that the [plaintiff] put his hands on [the child] because he felt that [the child] was in danger of hurting himself."

The hearing officer set forth the plaintiff's version of the incident:

> "On the day of the incident, class started with attendance and as usual everyone was given the safety rules. At some point during class, [the child] was aggravating a student who was using the tracing machine. Near the end of the periods, [the child] stuck his fingers into the ink jet printer where the paper was coming out and the [plaintiff] told him to get out of there and he did. After this, the [plaintiff] saw [the child] over at his lazer [sic] graph printing machine. He saw him jumping up from the floor with his

hands on the table. He came down and knocked the paper off the feed table. The [plaintiff] put himself between him and machine and put his hands on [the child]. He put his right arm across the back of his shoulders and spun him counter clockwise. He did not use force when he spun him. He didn't want him hurt on the machine. He denies grabbing his neck and didn't see any injuries. [The child] sat down and started crying."

The hearing officer did not find the plaintiff a credible reporter, pointing out that the plaintiff had given various accounts as to how he had touched the child, one of which was consistent with the child's statement. (The hearing officer here referred to her previous finding concerning the meeting with the school principal.) On the other hand, the hearing officer found the child credible. "The child acknowledged horse playing in class; he was crying as reported by the child and the [plaintiff]; and, the [plaintiff] acknowledged, at least once, grabbing [the child] by the neck. Injuries were seen on the neck consistent with his account."

About two and one-half years later, on January 12, 2004, the hearing officer affirmed the decision that the report was supported. Citing the definition of physical injury and abuse, 110 Code Mass. Regs. § 2.00 (1996), see note 1, *supra*, and the regulations applicable to whether a decision is supported, 110 Code Mass. Regs. § 4.32 (2000), see note 5, *infra*, she rejected the plaintiff's claim that his actions were authorized by G. L. c. 71, § 37G, see note 6, *infra*. The hearing officer did not believe the plaintiff's testimony that he intervened because the child was creating a danger to himself or others. Rather, she found that the act of grabbing the child by the neck was done intentionally, in anger, and resulted in injury and thereby met the definition of physical abuse.

As stated earlier, the hearing officer's decision was subsequently affirmed by a Superior Court judge who ruled that there was substantial evidence in the record to support the decision, that the decision was neither arbitrary nor capricious, and that the plaintiff was not prejudiced by the delay in the issuance of the decision.

2. *Discussion*. a. *Substantial evidence*. In determining whether

there was substantial evidence to support the hearing officer's decision, "there need only be 'substantial evidence' supporting [her] conclusion that there was 'reasonable cause to believe' " that the plaintiff had abused the child. *Lindsay* v. *Department of Social Servs.*, 439 Mass. 789, 798 (2003).[5] See *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 779 (2003). Because of its mission "to protect and provide services to children," the department is not required in such cases "to adopt a higher standard of proof." *Lindsay* v. *Department of Social Servs.*, *supra* at 803-804. Moreover, "[h]earings on appeals are not subject to any formal rules of evidence, and written materials from the department's files and records are admissible. 110 Code Mass. Regs. § 10.21(1), (4) (1993)." *Covell* v. *Department of Social Servs.*, *supra* at 778.

In conducting our review, we give " 'due weight to the experience, technical competence and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it,' G. L. c. 30A, § 14(7), . . . [and in] determin[ing] whether an agency's decision is supported by substantial evidence, we examine the entirety of the administrative record and take into account whatever in the record fairly detracts from the supporting evidence's weight." *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. 385, 390 (1999).

On appeal, Wilson raises several arguments questioning the substantiality of the evidence supporting the department's decision. As he did below, he asserts that G. L. c. 71, § 37G,[6] permits teachers to use reasonable force to protect students who

---

[5]As defined in 110 Code Mass. Regs. § 4.32(2) (2000), " '[r]easonable cause to believe' means a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected. Factors to consider include, but are not limited to, the following: direct disclosure by the child(ren) or caretaker; physical evidence of injury or harm; observable behavioral indicators; corroboration by collaterals (e.g., professionals, credible family members); and the social worker and supervisor's clinical base of knowledge."

[6]General Laws c. 71, § 37G(*b*), inserted by St. 1982, c. 303, provides that "[t]he provisions of this section shall not preclude any member of the school committee or any teacher or any employee or agent of the school committee from using such reasonable force as is necessary to protect pupils, other persons, and themselves from an assault by a pupil."

are in danger of injuring themselves because of dangerous or disruptive behavior in the classroom. In his view, a "de minimis" injury to a child as a result of the use of reasonable force pursuant to § 37G does not constitute abuse within the meaning of the department's regulations. In pressing his argument, Wilson asserts that the hearing officer ignored the evidence that tended to conflict with or detract from the department's decision and which supported his own position that he acted out of safety concerns for the child.[7]

The hearing officer, however, was not required to believe the plaintiff. She could determine from the child's statements that the investigator's "impression" that the plaintiff did not act out of concern for the child's safety was credible and that the plaintiff acted intentionally and in anger.

The plaintiff also takes issue with the hearing officer's finding that the child, but not the police officer who prepared the incident report, was credible without hearing either of them testify. In *Covell* v. *Department of Social Servs.*, 439 Mass. at 787, however, the court rejected the

> "assertion that credibility cannot be compared unless all of the witnesses testify in person. . . . While live testimony may provide the optimal opportunity for the assessment of credibility, the fact that parties before an agency have differing versions of critical events does not make live testimony the sine qua non for satisfying the substantial evidence test."

In a footnote the court added:

> "Such an approach to the substantial evidence test would also be contrary to the department's articulated policy of *not* having child witnesses testify at such proceedings absent a 'compelling reason' showing that the child's testimony is 'essential.' " (emphasis in original)

*Id.* at 787 n.20, citing 110 Code Mass. Regs. § 10.13(2)(a)

---

[7]Aside from his testimony, he points to the photographs showing a crowded classroom cluttered with machinery, the child's lengthy disciplinary record and disruptive behavior in the classroom, and the finding of the clerk magistrate on the mother's application for a criminal complaint that Wilson had used force against the child that was "reasonable for that activity."

(1993). We note that the plaintiff made no request for the issuance of subpoenas for the police officer or other witnesses not testifying in person. See 110 Code Mass. Regs. § 10.13(2).

"Substantial evidence may be based on hearsay alone if that hearsay has 'indicia of reliability.' " *Covell* v. *Department of Social Servs., supra* at 786. Here, there was additional evidence. Abrasions on the child's neck were seen by the mother, the pediatrician, the police officer, and the investigator. Unlike the child, who gave relatively consistent statements concerning the incident, the plaintiff presented inconsistent accounts and admitted at one point before the mother and the school principal that he might have grabbed the child around the neck.

The plaintiff also urges that the investigator, in supporting the 51A report, did not understand the applicable legal standard and considered any harm, however trivial, to constitute abuse. The investigator's supervisor, who had approved the report issued pursuant to G. L. c. 119, § 51B, testified to the contrary, saying that the department did not consider all injuries to be abuse. Moreover, applying the appropriate degree of judicial deference to the department's judgment and discretion, we cannot say that the department's determination on the evidence that the child's injuries were sufficient to fall within the department's definition of "abuse" and "physical injury" was arbitrary.[8]

In sum, a review of the entire record indicates that there was substantial evidence to support the department's conclusion that there was "reasonable cause to believe" that the plaintiff abused the child. "[A]n agency's judgment on questions of fact will enjoy the benefit of the doubt in close cases." *Cobble* v. *Commissioner of the Dept. of Social Servs.,* 430 Mass. at 391.

b. *Violation of regulation's time standards.* The plaintiff argues that the department's decision must be "unsupported" because it violated its own mandatory regulations by failing to issue a decision within the time period allowed by 110 Code Mass. Regs. § 10.29 (1998).[9]

To set aside the department's decision, the plaintiff must

---

[8]We note that while G. L. c. 119, § 51A, originally referred to "serious" injury, the Legislature deleted the word "serious" in 1993. See *Cobble* v. *Commissioner of the Dept. of Social Servs.,* 430 Mass. at 385 n.1.

[9]Title 110 Code Mass. Regs. § 10.29 provides, in relevant part: "The [h]earing [o]fficer shall render a written decision within 45 business days

show not only that the department violated its own regulations, but also that his substantial rights were prejudiced by its action. G. L. c. 30A, § 14(7). See Cella, Administrative Law & Practice § 1563 (1986). See also *Amherst-Pelham Regional Sch. Comm. v. Department of Educ.*, 376 Mass. 480, 497 (1978); *Boston v. Massachusetts Commn. Against Discrimination*, 47 Mass. App. Ct. 816, 819 n.6 (1999) ("A court should not reverse an agency decision unless the errors alleged have prejudiced the substantial rights of a party").

Notwithstanding the long delay in the issuance of the decision, the plaintiff was able to exercise his right to seek judicial review pursuant to G. L. c. 30A. To the extent that he claims prejudice because he was "stigmatized" for two and one-half years as a child abuser, "not only to his employer, but to the Department of Education as well," in view of the affirmance by the hearing officer of the investigator's decision to support the 51A report, the plaintiff has shown no prejudice.

c. *Possible action by the Department of Education.* The plaintiff, as indicated earlier, sought in his complaint notification to the Department of Education that the decision of abuse was unsupported. He asserts that there may be consequences to a supported finding of abuse in the "recertification" process he must undergo with the Department of Education to which, he claims, he must report the supported finding.

Although we have determined that on the standard of "reasonable cause to believe," there was substantial evidence to support the findings of the department, that standard has been characterized as a "threshold determination." *Care & Protection of Robert*, 408 Mass. 52, 63-64 (1990). That standard and the strict ten day time limitation for the investigation imposed by G. L. C. 119, § 51B, serve to prevent expeditiously further harm to a child. However, it also prevents a more thorough investigation. The investigator did not see the classroom, did not have the child's disciplinary report,[10] and was limited by time constraints in the number of witnesses she was able to

---

after the close of the record unless notice is provided to the aggrieved party that a longer period of time is needed to reach a decision." No such notice was sent.

[10]We note that despite the disciplinary record showing seventeen infrac-

interview. Although some of these omissions were filled by evidence presented to the hearing officer, see 110 Code Mass. Regs. § 10.06(8)(c) (1998), permitting such additional evidence, the impressions and conclusions of the investigator were of great significance in the ultimate department decision. Indeed, nineteen of the hearing officer's thirty-two findings were based, at least in part, on the investigator's report or on her testimony. We also note that what appears to have upset the mother most and what probably triggered her 51A report was not the child's injury. This is evident from the investigator's findings, the first paragraph of which stated that when she went to the home and met with the mother and the child,

> "Mother was very pleasant/cooperative but upset about the incident. She reported that what upset her most was the fact that her son's teacher, Mr. Wilson did not take the incident seriously. She *added that she would have handled the issue differently if Mr. Wilson had taken responsibility and apologized for the incident*" (emphasis supplied).

This evidence may raise some question as to the extent of the physical harm suffered by the child.

In any event, as pointed out in *Lindsay* v. *Department of Social Servs.* 439 Mass. at 802-804 & n.12, the standard of proof and kinds of evidence that are appropriate for the department's purposes may not be the standard to be used by another agency notified of the department's decision to "support" an allegation of child abuse or neglect. We read the *Lindsay* case, *id.* at 800-804, as cautioning any agency intending to take action involving a person's liberty or property interest that it must afford such person additional safeguards and that it may not rely automatically on a department's decision based on the "reasonable cause to believe" standard.

*Judgment affirmed.*

---

tions, when the investigator asked the child if he had any problems with any other teachers, he stated that he had not, and that he had only been reprimanded one other time when he had a portable compact disc player around his neck.