Roach, Christine M., J.
This is a petition for judicial review, pursuant to G.L.c. 30A, §14, of a decision and order of the Department of Social Services (DSS) supporting allegations of plaintiffs neglect of four children *335 living in his home. Both parties filed motions for judgment on the pleadings. Following a hearing on May 13, 2008 and full review of the record, the DSS Motion is GRANTED and Plaintiffs Motion is DENIED.
Standard of Review
A finding of an agency must be supported “by substantial evidence” to withstand judicial review. G.L.c. 30A, §14(7)(e). Substantial evidence exists where there is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Blue Cross of Massachusetts, Inc. v. Commissioner of Insurance, 397 Mass. 117, 135 (1986), quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981). Where there is substantial evidence to support the findings of the agency, the court will not substitute its own view of the facts. Doherty v. Medford Retirement Board., 425 Mass. 130 (1997); D’Amour v. Board of Registration of Dentistry, 409 Mass. 572, 581 (1991). The court must “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as the discretionary authority conferred upon it.” G.L.c. 30A, § 14(7). The court may not disturb an agency’s decision “unless it is based upon an error of law, unsupported by substantial evidence, arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” Blue Cross of Massachusetts, Inc., 397 Mass. at 120. Petitioner as the party aggrieved by the decision in this case has the burden of proving by a preponderance that the Department’s actions cannot withstand such review. Covell v. Department of Social Services, 439 Mass. 766, 778-79 (2003).
Factual Record
Petitioner Mr. DeLeon and his wife, Pauline DeLeon (Pauline) are the parents of two minor children, Phyl DeLeon, born November 12, 2001, and Felix DeLeon, Jr., born February 25, 2006. Pauline also has a child from a prior relationship, Xavier Cepeda, born February 2, 1998. DeLeon and Pauline previously fostered a fourth child, Derick Mercado, bom August 8, 1996.
On March 30-31, 2006, DSS received three reports of suspected neglect, pursuant to G.L.c. 119, §51A, and based on the following incident. On March 30, at approximately 10:00 p.m., Xavier called 911 to report a domestic dispute. Two police officers interviewed Pauline, using then-eight-year-old Xavier as an interpreter. Pauline reported that she and DeLeon had an argument, which escalated when DeLeon grabbed her arm and threw her on her son’s bed. Xavier demonstrated this incident on the police officer. When Xavier attempted to contact police, DeLeon took the phone and pushed Pauline into Xavier. No one was injured; however, the officers arrested DeLeon.[1]
DSS Emergency response workers (ERWs) responded to the report of neglect at 2:00 a.m. on March 31, 2006. At that time, DeLeon and Pauline admitted arguing, but denied any physical altercation. DeLeon said that Xavier made a mistake by calling police. Although DeLeon and Pauline stated that the children were not at home, the workers located Derick sleeping in a bedroom, smelling of urine.[2] The bedroom was in disarray, including the presence of garbage, and the bed was broken. Derick reported that he witnessed DeLeon attempt to choke Pauline, that Pauline was crying, and that DeLeon hit Xavier for calling the police. Derick also reported that he witnessed previous arguments between the couple, but no physical altercations.
On April 2, 2006 DSS sent an investigator to the DeLeon home. DeLeon and Pauline both denied that DeLeon struck Pauline. Xavier reported seeing DeLeon push Pauline, but not seeing him hit her. There is no evidence that either Phyl or Felix, Jr. was present during the altercation.
Based on its investigation, DSS supported the allegations of neglect. At a fair hearing on the issue, the hearing administrator affirmed the investigator’s decision to support the report of neglect for all four children. The present appeal followed.
Discussion
A. Delayed Decision
DeLeon argues that DSS’s decision is invalid, because it was not issued within the forty-five business days required by the regulations. See 110 Mass. Code Regs. 10.29. DSS may delay the decision only if it notifies the aggrieved party that it requires additional time. Id. DSS did not contact DeLeon to inform him it needed an extension.
A reviewing court will overrule an agency’s decision based on the failure to follow the agency’s own procedures only if there is a showing of prejudice. Fisch v. Board of Registration in Medicine, 437 Mass. 128, 133 (2002), quoting Martorano v. Department of Public Utilities, 401 Mass. 257, 262 (1987). Here DeLeon claims his reputation has been damaged by the undue delay, resulting in prejudice. DeLeon further asserts that, because he works for a social service agency, DSS’s failure to render a timely decision hindered his employment.
The court concludes DeLeon was not prejudiced by DSS’s failure to render a decision within forty-five business days. DSS ultimately supported the allegations, which suggests that DeLeon was not prejudiced. See Wilson v. Department of Social Services, 65 Mass.App.Ct. 739, 748 (2006). DeLeon has failed to show any harm to his reputation based on the delay, rather than based on the decision to support the reports.
B. Agency Decision to Support Neglect
When allegations of abuse or neglect are reported to DSS, it investigates to determine whether the allegations are “supported” or “unsupported." Covell v. Department of Soc. Servs., 439 Mass. 766, 774 (2003), citing 110 Code Mass. Regs. §4.32(1). DSS supports *336 an allegation “if it has ‘reasonable cause to believe that an incident... of abuse or neglect by a caretaker did occur.’ ” Id. at 774-75, quoting 110 Code. Mass. Regs. §4.32(2) (emphasis in original). Neglect is defined as “failure by a caretaker either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability and growth, or other essential care.” Id. at 774, note 8. “Reasonable cause to believe” is based on “a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child had been abused or neglected.” Id. at 775. The investigator considers a number of factors, including: information provided by the child or caretaker, evidence of physical injury, observable behavior, and the investigator’s base of clinical knowledge. Id.
A physical or verbal altercation between caretakers, witnessed by the children, “constitutes a failure to provide the children with minimally adequate stability and growth.” John D. v. Department of Social Services, 51 Mass.App.Ct. 125, 132 (2001). “[Witnessing domestic violence . . . has a profound impact on children.” Id. at 133, quoting Custody of Vaughn, 422 Mass. 590, 599 (1996). Where a situation presents a substantial risk of emotional harm to a child, DSS is not required to wait for that harm to manifest before intervening. Id. at 131. The statutory scheme under which DSS operates is intended to apply both to actual and threatened harm. Id. at 132.
Here, the evidence of record provides substantial support for the agency to have found reasonable cause to believe DeLeon assaulted Pauline and Xavier, in front of at least Xavier, and probably also the foster child. The record also provides substantial evidence for reasonable cause to believe that the foster child was living in starkly unsanitary conditions compared to the three biological children, and thus was being neglected during this same timeframe.
Petitioner challenges the record as based on “hearsay and misinterpretation.” But substantial evidence may be based on hearsay alone if that hearsay has indicia of reliability. Covell, 439 Mass. at 782. The consistency of the children’s reports, as well as the absence of any motive to fabricate, lend reliability to their statements. And the hearing officer was in the best position to assess the witnesses’ understanding, interpretation, and expression regarding the events. Id. at 786-87. This evidence is sufficient to support the hearing officer’s findings.
“A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might support.” Cambridge v. Civil Service Comm’n, 43 Mass.App.Ct. 300, 303 (1997) (citations omitted). The administrative record highlights the evidence supporting the allegations that two of the children witnessed a physical altercation between DeLeon and Pauline, at least two of the children witnessed various verbal conflicts, and one of the children was living in unsanitary conditions. These are reasonable and rational explanations for the agency’s decision, and the court cannot substitute its own judgment for that of the administrative agency. Lisbon v. Contributory Retirement Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996).
Accordingly, the Department’s Motion for Judgment on the pleadings is GRANTED, the decision is affirmed, and this case is dismissed with prejudice.

 Ultimately, the case was dismissed. DeLeon made no factual admissions.

 Nile workers also found Phyl sleeping in a different bedroom.