## B.K. *vs.* DEPARTMENT OF CHILDREN AND FAMILIES.

No. 10-P-948.

Franklin. April 1, 2011. - July 13, 2011.

Present: WOLOHOJIAN, MILKEY, & HANLON, JJ.

*Child Neglect. Department of Children & Families. Administrative Law,* Substantial evidence.

Substantial evidence supported a decision of the Department of Children and Families determining that there was reasonable cause to believe an allegation of neglect, made against the plaintiff father in a report under G. L. c. 119, § 51A, where the father's knowing violation of the terms of an order entered by a Probate and Family Court judge prohibiting contact with the daughter constituted a failure to provide minimally adequate emotional stability and growth. [779-783]

No substantial prejudice arose, in an administrative appeal of a determination by the Department of Children and Families (department) of neglect, from the department's failure to conduct a hearing or issue a decision within the applicable regulatory time standards. [783]

There was no merit to a contention of the plaintiff father that he was required on appeal to defend against collateral findings made in a separate determination by the Department of Children and Families, in another matter that was heard at the same time by the same hearing officer, from which the father did not appeal. [783]

CIVIL ACTION commenced in the Superior Court Department on October 31, 2008.

The case was heard by *Bertha D. Josephson,* J., on a motion for judgment on the pleadings.

*Gregory A. Hession* for the plaintiff.

*James S. Whitcomb,* Assistant Attorney General, for Department of Children and Families.

WOLOHOJIAN, J. This appeal arises from a determination by the Department of Children and Families (DCF) that the father, B.K., had emotionally neglected his younger daughter.[1] At issue

---

[1]The procedural history of the case is as follows. A report was made under

is whether the father's repeated violations of a Probate and Family Court judge's order prohibiting him from contacting his children or from going to their school could support a finding of emotional neglect within the meaning of 110 Code Mass. Regs. § 2.00 (1996). We conclude that DCF was within its authority in finding that the allegation of neglect was supported, and accordingly, we affirm.

*Background.*[2] The father and mother were involved in a contentious custody dispute over their two children. The children's therapist reported that the younger daughter was "guarded" and trying to avoid taking sides with either parent, a goal the therapist endorsed because she believed that it was important to keep the children "out of the mill" of the animosity between the parents. The therapist further found the father to be "sketchy," to engage in "half truths," and to make inconsistent statements. By contrast, the therapist viewed the mother to be "sound."

On September 12, 2006, a Probate and Family Court judge issued an oral order granting physical custody of the children to the mother and, among other things, prohibiting the father from going to his children's school without a court order or contacting the children without the mother's permission. The father was present when the order was issued, and as of that time, he had had no contact with the children for over three months. A written temporary order reflecting the terms of the oral order was dated September 15 and docketed on September 19, 2006.

Also on September 15, 2006, DCF received a report, pursuant to G. L. c. 119, § 51A (51A report), alleging neglect and sexual abuse by the father of the younger daughter. The father was informed of the 51A report that day and was told that DCF would investigate. The allegation of sexual abuse was based on the mother's report that the daughter displayed sexualized

G. L. c. 119, § 51A, alleging that the father neglected and sexually abused his younger daughter. After DCF's determination that the report of neglect (but not sexual abuse) was supported, see G. L. c. 119, § 51B, the father pursued an administrative appeal with DCF's fair hearing office, which affirmed the decision that the report was supported. The father sought judicial review in the Superior Court, pursuant to G. L. c. 30A, § 14(7). A Superior Court judge affirmed the decision, and the father now appeals.

[2]We summarize the findings of the administrative hearing officer (hearing officer), all of which were supported by ample evidence.

behavior while demonstrating a game that she (the daughter) said she played with the father.

Sometime between September 13 and September 18, the father went to the younger daughter's school before school hours and delivered a letter to the school principal, who in turn gave it to the younger daughter. Responding to a letter postmarked September 16,[3] written by the younger daughter with the help of her therapist, the father wrote in part:

> "It was so nice to get a letter from you like that! . . . Don't you worry my sweetness you will definitely get your doggie and it will not be in the wintertime. I did not forget my promise my precious [daughter]. I will keep my promises to you, I always have and I always will! You can count on it my darling. I love you more and more everyday. I have decided you can buy your dog (puppy)[.] You know how we usually get pets from the animal shelter? And when we do we have to pick whatever they have? Well I know you want a special kind of dog a special breed and type so I will let you pick one of the ones you wanted that we saw on the internet — okay. . . . Let's keep writing and be pen pals until we meet again."

The father's delivery of this letter violated the probate judge's order in two ways: first, the father had been prohibited from going to the children's school; and second, he had been prohibited from contacting the children without the mother's permission.

The father violated the Probate Court order on other occasions as well. On December 8, 2006, he contacted the children by electronic mail message (e-mail). He also inappropriately sent gifts to the children through the parents of their classmates, and he telephoned the mother's home without leave.

*Discussion.* The father argues that DCF lacked substantial evidence to support the allegation of neglect. He contends that writing to his daughter in response to a letter from her and her therapist about his earlier promise of a puppy cannot constitute "neglect" under DCF's regulatory definition of that term.

Neglect is defined, in pertinent part, as the "failure *by a*

---

[3]The hearing officer did not credit the father's testimony that he received his daughter's letter on September 16, the same day it was postmarked.

*caretaker*, either deliberately or through negligence or inability, to take those actions necessary to provide a child with minimally adequate . . . emotional stability and growth." 110 Code Mass. Regs. § 2.00. Our task on appeal is to determine whether there was substantial evidence to support DCF's decision that there was reasonable cause to believe the father was responsible for neglect. See G. L. c. 30A, § 14(7)(*e*); *Lindsay* v. *Department of Social Servs.*, 439 Mass. 789, 797 (2003). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). The entire record is to be taken into account, including evidence supporting the agency's conclusion as well as evidence fairly detracting from that conclusion. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), and cases cited. "Reasonable cause to believe" refers to "a collection of facts, knowledge or observations which tend to support or are consistent with the allegations, and when viewed in light of the surrounding circumstances and credibility of persons providing information, would lead one to conclude that a child has been abused or neglected." 110 Code Mass. Regs. § 4.32(2) (2000).

Put otherwise, our role is to decide whether there was enough evidence to permit a reasonable mind to accept that the father failed to take those actions necessary to provide his daughter with minimally adequate emotional stability and growth. We defer to DCF's determinations of fact and its reasonable inferences drawn from the record. See *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. 385, 390 (1999). We also defer to DCF's assessments of the level of care required to meet a child's developmental and emotional needs, and we will not disturb those assessments unless they are unsupported by substantial evidence. See G. L. c. 30A, § 14(7); *Blue Cross of Massachusetts, Inc.* v. *Commissioner of Ins.*, 397 Mass. 117, 120 (1986).

Applying these principles, we conclude there was substantial evidence to sustain DCF's decision to support the allegation of emotional neglect. The father was the subject of an order entered in the Probate and Family Court curtailing his contact with the children. The order reflected the probate judge's firsthand assessment of what was in the best interests of the children. See

*Bak* v. *Bak*, 24 Mass. App. Ct. 608, 616 (1987) (probate judge's role in custody is to advance the best interest of the child). A probate judge determined that the children were best served by requiring the father to stay away from their school and to obtain the mother's consent before contacting them. Compliance with the probate judge's order, including the provision designed to shelter his daughter from contact with him, was what was minimally required of *this* father to protect his daughter's emotional and psychological well-being, at least for the duration of the order. Therefore, when he disregarded the order, the father failed to provide the "minimally adequate" emotional stability and growth necessary for the daughter's well-being. See 110 Code Mass. Regs. § 2.00.

The father knew of the order[4] but nonetheless chose to violate its terms. He did so in a manner designed to make the younger daughter feel that she was vulnerable at school, because that was where the father chose to deliver the letter and because he on other occasions enlisted her classmates' parents as intermediaries. As the hearing officer found, the father "failed to keep appropriate boundaries" between himself and the younger daughter — boundaries that had been established by court order as being in the best interests of the child.

The timing and context of the letter also support the finding of emotional neglect. As noted above, the parties were engaged in a contentious custody dispute. The younger daughter was trying to maintain a position of neutrality, and her therapist believed that it was important that she be kept "out of the mill" of the animosity between the parents. The probate judge's order was designed to achieve that end. The hearing officer found that the timing and content of the letter showed that the father was attempting to curry favor with the daughter in order to gain an advantage in the probate proceedings, regardless of the emotional detriment to her. In this context, the hearing officer's finding of neglect by the father when he put his own emotional needs ahead of his daughter's was well-supported, particularly where

---

[4]The father's argument that he did not know about the court order until after he delivered the letter is misplaced; we will not review credibility determinations where, as here, the record fully supports DCF's conclusion that the father knew about the order. See *Cobble* v. *Commissioner of the Dept. of Social Servs.*, 430 Mass. at 393 n.8.

the father demonstrated a repeated pattern of violating the Probate and Family Court order.[5] The delivery of the letter was not an isolated attempt by the father to disobey the terms of the order. Nor is one required to view the letter, or the delivery of gifts through classmates, as benign contacts by the father with the younger daughter. As the hearing officer found:

> "The timing and content of the letter to [the younger daughter] was [*sic*] suspect considering the recent Probate Court order favoring the mother[.] Through his written words and actions, the [father] showed his need to control the situation in order to put himself in the best light with regard to all involved, especially [the younger daughter]. [She] was the daughter who had not fully aligned herself with her father. The [father] was trying to make that happen and gain more favor with [the younger daughter] by reminding her of the promise of a puppy he had made to her months earlier." (Footnote omitted.)

From the timing and contents of the letter, as well as the manner of its delivery, the hearing officer could reasonably infer that the father sought to gain an advantage in the custody proceedings through the goodwill of his daughter, regardless of the consequences of his behavior on her emotional well-being. The same can be said about the father's delivery of gifts through the daughter's classmates. That the father took these actions and delivered the letter after three months without contact with the children and just after he learned of a 51A report alleging abuse also suggests an effort to manipulate his daughter for his own benefit in the custody dispute.

The father's argument that his behavior posed no risk of harm to his daughter misses the mark. The purpose of the mandatory reporting regime under G. L. c. 119, § 51A, is to provide DCF with information necessary to protect a child's health, safety, and development before actual harm is done. "If children are to be protected from 'neglect,' it makes no sense for the department to wait until neglect has already run its course to the

---

[5]We do not intend to suggest that emotional neglect always results when a parent places his or her own emotional needs ahead of the child's. We simply conclude that, in this case, the hearing officer could properly find emotional neglect based on the facts presented.

point of producing a physical or emotional injury." *Lindsay* v. *Department of Social Servs.*, 439 Mass. at 795. See G. L. c. 119, § 51A. A caretaker's actions that fail adequately to protect a child's well-being can constitute neglect, even in the absence of actual harm. See *Lindsay* v. *Department of Social Servs., supra.*

The father also argues that DCF's failure to conduct a hearing or issue its decision within the time standards contained in 110 Code of Mass. Regs. §§ 10.10 and 10.29 (1998) resulted in substantial prejudice. See G. L. c. 30A, § 14(7); *Fisch* v. *Board of Registration in Med.*, 437 Mass. 128, 133-134 (2002). Although DCF failed in this instance to follow its own time standards, no showing of prejudice to the father has been made.[6] See *Wilson* v. *Department of Social Servs.*, 65 Mass. App. Ct. 739, 748 (2006) (no prejudice despite two and one-half year delay by department in issuing decision).

Finally, the father argues that the record on appeal should not have included information pertaining to a second DCF decision in which the father was found to have neglected a neighbor's child.[7] By agreement of the parties, however, the two 51A reports were heard together by the same hearing officer, and the parties agreed that the same evidence could be used for both matters. Contrary to the father's contention, he has not been required in this appeal to defend against the collateral findings of the other decision, which he chose not to appeal. Indeed, our decision today in no way rests on any of the findings or evidence connected with the 51A report concerning the neighbor's child.

*Judgment affirmed.*

---

[6]DCF did not conduct a hearing or issue its decision within the time periods required by 110 Code Mass. Regs. §§ 10.10(2) and 10.29.

[7]DCF also supported a contemporaneous 51A report alleging that the father had neglected his neighbor's child in connection with a trip they took to New Jersey. The defendant appealed both decisions to the fair hearing office, which heard them in the same proceeding on May 16, 2007, and later affirmed both. The father did not appeal from DCF's determination that the 51A report concerning the neighbor's child was supported, and the facts underlying that report were in sum as follows: The father took his neighbor's child (then approximately fifteen years old) on a trip to New Jersey, during which he was the child's only caretaker. During that trip, he assisted the child in stealing compact discs from a car and then subsequently lied to police about the events.