# DECISIONS

## OF THE

## SUPREME JUDICIAL COURT

### OF

## MASSACHUSETTS

---

KURT GAFFNEY *vs.* CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]

Worcester. March 5, 1996. - June 13, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Statute,* Construction. *Public Employment,* Forfeiture of retirement benefits. *Constitutional Law,* Ex post facto law.

The Contributory Retirement Appeal Board correctly determined that G. L. c. 32, § 15 (4), was applicable to work a forfeiture of pension benefits of a member of the State retirement system who was convicted after his resignation of common law larceny of money from the municipal department in which he had worked [3-5], and where some of the offenses occurred after that statute's effective date, the required forfeiture of accumulated interest did not constitute an ex post facto law [5-6].

CIVIL ACTION commenced in the Superior Court Department on October 15, 1992.

---
[1]Contributory Retirement Board of Shrewsbury.

The case was heard by *Robert H. Bohn, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*T. Philip Leader* for Contributory Retirement Board of Shrewsbury.

*James R. Lemire* for the plaintiff.

LIACOS, C.J. Beginning in 1984, the plaintiff, Kurt Gaffney, served as superintendent of the Shrewsbury water and sewer department. Gaffney resigned from that position in September, 1989. In May, 1990, a grand jury returned five indictments against Gaffney for larceny over $250 from the town of Shrewsbury, one for each of the years 1984 through 1989, and one indictment charging larceny by common scheme to steal money and property from the town of Shrewsbury as from 1984 through 1989. He pleaded guilty to all charges in June, 1990. By 1990, his accumulated deductible contributions held by the Contributory Retirement Board of Shrewsbury (board) totalled $21,729.83. In August, 1990, he made restitution of the stolen monies in the amount of $21,336.07. Gaffney then sought to recover the accumulated deductible contributions and accumulated interest.

The board refused, on the basis that G. L. c. 32, § 15 (4) (1994 ed.), worked a forfeiture of Gaffney's pension benefits and accumulated interest, providing only for the return of actual contributions.[2] Gaffney pursued an appeal, claiming that G. L. c. 32, § 15 (3), rather than § 15 (4) should apply to him, thereby allowing recovery of the accumulated interest. The appeal also contended that Gaffney should recover any interest that accumulated prior to January 12, 1988, the effective date of § 15 (4) (St. 1987, c. 697, § 135). During administrative review proceedings, an administrative magistrate of the Division of Administrative Law Appeals and then

---

[2]Subsection 4 in relevant part provides:

> "*In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance* . . . , nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero." (Emphasis supplied.)

the Contributory Retirement Appeal Board (CRAB) both rejected these arguments. Then Gaffney, pursuant to G. L. c. 30A, § 14 (1994 ed.), sought judicial review in the Superior Court. A judge in the Superior Court affirmed CRAB's decision allowing application of § 15 (4), but reversed as to the forfeiture of interest prior to January 12, 1988, the effective date of the statute. He so ruled on the ground that forfeiture of the interest earned prior to January 12, 1988, created an ex post facto application of the statute. After remand to CRAB, an amended judgment was entered requiring the board to pay the sum of $11,441.75 for interest earned from 1966 to January 12, 1988. The parties cross appealed. We transferred the case here on our own motion.

1. *Applicability of G. L. c. 32, § 15 (4)*. Gaffney argues § 15 (4) does not apply to him because he was not convicted of a "violation of the laws applicable to his office or position." He would read this language to include only crimes that as part of their legal definition involve public office or employment. Thus, crimes such as the larcenies or the common scheme to commit larceny, to which Gaffney pleaded guilty, would not implicate § 15 (4).

In *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684 (1986), this court noted that the Legislature intended G. L. c. 32, § 15 (3A) (1994 ed.), to work a forfeiture of a public employee's pension only if the employee was convicted of two specific State crimes. We construed the statute narrowly because of its penal character. Thus, a Federal conviction for a violation of the Hobbs Act did not work a forfeiture of a pension. Shortly after our decision the General Court enacted St. 1987, c. 679, § 47, which inserted G. L. c. 32, § 4, providing for an intermediate level of pension forfeiture in a broader array of circumstances.[3]

We recognize that § 15 (4) was a reaction to our *Collatos* decision. The General Court undoubtedly intended to broaden the range of crimes that would lead to pension forfeiture. It is

[3]For the reasons we stated in *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684 (1986), we believe that § 15 (4) is penal for purposes of statutory construction, i.e., we construe the statutory language narrowly. We intend no comment on the penal character of § 15 (4) for any other purpose. Unlike the crimes enumerated in § 15 (3A), which clearly cause punitive loss of a member's accumulated deductions, the offenses in § 15 (4) cause loss of only future pension benefit payments and accumulated interest.

in this context that we must decide whether the common law larceny of public funds from the department by the plaintiff who was the superintendent triggers § 15 (4) pension forfeiture. See note 2, *supra*, for the statutory language expressing clearly the intent of the Legislature that pension forfeiture arises for conviction of a criminal offense "involving violation of the laws applicable to his office or position." We look to "the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Telesetsky* v. *Wight*, 395 Mass. 868, 872-873 (1985).

The judge found that the plaintiff was the superintendent of the Shrewsbury water and sewer department from 1984 through 1989. Among his duties was the management of "the administrative tasks of the Department," the preparation of the yearly budget, supervision of activities connected to the reading of water meters and the billing of customers, and the control of departmental costs. It was from these funds that Gaffney stole town money for which he, on indictment, pleaded guilty. Being aware of *Collatos,* where the decision turned on the mere fact that the member's conviction was for the Federal equivalent of the requisite State crime, the General Court intended to avoid another such result. In using a broad phrase to describe the condition precedent to forfeiture, the intent clearly is to avoid having the precise form of the criminal enforcement action make a difference with respect to the pension forfeiture issue. Further evidence of this stems from the title of § 15 (4) — "Forfeiture of pension upon misconduct." See *Champigny* v. *Commonwealth*, 422 Mass. 249, 252 (1996).

Gaffney's approach would have § 15 (4) operate only in cases of violations of highly specialized crimes addressing official actions, while not providing the same when officials engage in criminal activities in the course of their duties that satisfy the elements of traditional criminal offenses. Thus, according to this view, violations of conflict of interest laws would work pension forfeiture, while embezzlement (a form of common law larceny) would not. We disagree. The substantive touchstone intended by the General Court is criminal activity connected with the office or position.

Yet it is also apparent that the General Court did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions. Only those violations related to the member's official capacity were targeted. Looking to the facts of each case for a direct link between the criminal offense and the member's office or position best effectuates the legislative intent of § 15 (4). It is part of Gaffney's argument that only § 15 (1)-(3) should apply to him. Those provisions apply to misappropriation of government funds and property.

Gaffney offers a reading of § 15 (3), (3A), and (4) as mutually exclusive alternatives, and would have only § 15 (3) apply to him. To the contrary, these subsections provide complementary remedies, especially §§ 15 (3) and 15 (4). Section 15 (1)-(3) allows a retirement board to initiate an administrative proceeding against a member to provide for restitution, out of accumulated pension assets, of misappropriated funds and costs of investigation. Section 15 (3) fits in this scheme by prohibiting any payout of remaining benefits unless restitution is first made, whenever the member has been convicted of crimes relating to public funds or property.

Section 15 (3A) provides an additional sanction, forfeiture of all pension rights and funds accumulated in a pension, when the member has committed either of two specified State offenses. Section 15 (4) adds a forfeiture remedy of intermediate severity. When this last type of forfeiture occurs, the member still recovers actual deductible contributions. In such cases the restitutionary scheme of § 15 (1)-(3) might still be needed to recover any misappropriated funds or property out of the pension assets not forfeited. The board and CRAB properly decided that § 15 (4) applied to Gaffney's pension.

2. *Forfeiture of accumulated interest.* The judge concluded that for the act to work a forfeiture of interest accumulated before the effective date of § 15 (4) would constitute an ex post facto law in violation of the due process principles of the Fourteenth Amendment to the United States Constitution and art. 24 of the Declaration of Rights of the Massachusetts Constitution. We disagree. The prohibition against ex post facto laws precludes only after the fact legislative change of the criminal consequences of prior actions. See *News Group Boston, Inc.* v. *Commonwealth,* 409 Mass. 627, 631 (1991); *Commonwealth* v. *Bargeron,* 402 Mass. 589, 590-591 (1988), and cases cited.

Gaffney committed five larcenies and one continuing offense. Statute 1987, c. 697, § 135, referred to § 47 (inserting G. L. c. 32, § 15 [4]), which provides that the new statute "shall apply only to criminal offenses committed on or after the effective date of this act." Section 15 (4) refers to final criminal convictions rather than criminal offenses. The convictions occurred in 1990. Focusing only on the date of the "criminal offenses," it is clear that at least two of them occurred after the new statute's effective date. General Laws c. 4, § 6, Ninth (1994 ed.), provides that, "[w]herever a penalty or forfeiture is provided for a violation of law it shall be for *each* such violation" (emphasis supplied). Ex post facto law prohibitions concern only the timing of the criminal act as compared to the effective date of the criminal statute. See *News Group Boston, Inc., supra* at 631-632. Thus, there was no ex post facto aspect of CRAB's decision.

For these reasons, the judgment of the Superior Court is affirmed in part and reversed in part. The amended judgment in favor of Gaffney is vacated, and the case is remanded to the Superior Court to enter an order affirming the decision of CRAB.[4]

*So ordered.*

---

[4]Gaffney makes one final claim that the pension forfeiture constitutes an excessive fine in violation of either the Eighth Amendment to the United States Constitution (as incorporated) or art. 26 of the Massachusetts Declaration of Rights. Conclusory statements in a brief do not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). Nevertheless, we note that there is no dispute that Gaffney's larcenies totalled over $21,000 while the forfeited accumulated deductions and interest (albeit not including vested rights to benefit payments) totalled approximately $33,000.