## Retirement Board of Somerville *vs.* John Buonomo & others.[1]

Middlesex. January 9, 2014. - April 2, 2014.

Present: Ireland, C.J., Spina, Botsford, Gants, Duffly, & Lenk, JJ.

*Retirement. Public Employment,* Forfeiture of retirement benefits. *Register of Probate. Practice, Civil,* Action in nature of certiorari.

This court concluded that forfeiture of the retirement allowance of the defendant, who was a register of probate, from a city's retirement board (related to the defendant's prior service as a member of the city's board of aldermen) was required by his criminal convictions involving violations of laws applicable to his office or position, pursuant to G. L. c. 32, § 15 (4), where the conduct to which he pleaded guilty, i.e., charges stemming from the theft of monies from cash vending machines attached to photocopy machines located in the building where he worked, violated the Code of Professional Responsibility for Clerks of the Courts [668-671]; and where, under the language of G. L. c. 32, § 15 (4), the office or position whose laws were violated did not need to be the same as the one from which the defendant was receiving a retirement allowance [671-672].

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on July 14, 2010.

After transfer to the Superior Court Department, the case was heard by *Thomas R. Murtagh*, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Matthew J. Buckley* for the plaintiff.

*Nicholas Poser* for the defendant.

Spina, J. In 2009, John Buonomo was convicted of eighteen counts of breaking into a depository, G. L. c. 266, § 16, eight counts of larceny under $250, G. L. c. 266, § 30 (1), and eight counts of embezzlement by a public officer, G. L. c. 266, § 51. He committed these offenses during the time that he held office

---

[1]Justices of the Lowell Division of the District Court Department of the Trial Court, as nominal parties.

as register of probate of Middlesex County. At issue is whether, pursuant to G. L. c. 32, § 15, and as a consequence of his convictions, Buonomo forfeited the retirement allowance that he previously had earned as a member of the board of aldermen for the city of Somerville. Based on the language and intent of G. L. c. 32, § 15 (4), inserted by St. 1987, c. 697, § 47, we conclude that even though Buonomo's convictions involved violations of the laws applicable to his office or position as register of probate, he nonetheless forfeited his entitlement to a retirement allowance from the retirement board of Somerville (board) related to his prior service as a member of the board of aldermen. There is no requirement in § 15 (4) that the public office to which a member's criminal convictions relate be the same as the public office from which that member is receiving a retirement allowance. Accordingly, we reverse the decision of the Superior Court that reached a contrary conclusion.[2]

1. *Statutory framework.* The provisions of G. L. c. 32, § 15, pertain to dereliction of duty by a member of a contributory retirement system for public employees. See *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 170 (2006). General Laws c. 32, § 15 (4), provides:

> "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [§§ 1-28], inclusive, nor shall any beneficiary be entitled to receive any benefits under such provisions on account of such member. The said member or his beneficiary shall receive, unless otherwise prohibited by law, a return of his accumulated total deductions; provided, however, that the rate of regular interest for the purpose of calculating accumulated total deductions shall be zero."[3]

Forfeiture of a retirement allowance pursuant to G. L. c. 32,

---

[2]Because we decide this appeal on the basis of G. L. c. 32, § 15 (4), we do not consider whether Buonomo would be required to forfeit his retirement allowance pursuant to G. L. c. 32, § 15 (3), which pertains to misappropriation of governmental funds or property.

[3]General Laws c. 32, § 1, defines a "[m]ember" as "any employee included in the state employees' retirement system, . . . or in any county, city, town . . . contributory retirement system, . . . established under the provi-

§ 15 (4), is "mandatory and occurs by operation of law . . . . [It] is an automatic legal consequence of conviction of certain offenses." *State Bd. of Retirement* v. *Woodward,* 446 Mass. 698, 705 (2006), quoting *MacLean* v. *State Bd. of Retirement,* 432 Mass. 339, 342-343 (2000).

*2. Factual and procedural background.* On January 3, 2000, Buonomo retired from his position as a Somerville alderman and began receiving pension benefits from the board. In November, 2000, he was elected register of probate of Middlesex County, and he commenced his term on December 8, 2000.[4] After his election, Buonomo was eligible to join the State employees' retirement system as a member in service, but he chose instead to continue receiving his retirement allowance from the board. See G. L. c. 32, § 3 (2) (*a*) (iv). As a consequence, he remained an inactive member of the Somerville retirement system, see note 3, *supra,* while at the same time working and collecting his salary as register of probate. See G. L. c. 32, § 91 (*a*).

On August 6, 2008, Sergeant Brian P. Connors of the State police filed an application in the District Court for the issuance of a criminal complaint charging Buonomo with eighteen counts of breaking into a depository, eight counts of larceny under $250, and eight counts of embezzlement by a public officer. In support of the application, Sergeant Connors alleged that in June, 2008, State police assigned to the Public Protection, Anti-Terrorism, Corruption and Technology Unit of the Middlesex

sions of [§§ 1-28], inclusive, or under corresponding provisions of earlier laws, and if the context so requires, any member of any contributory retirement system established under the provisions of any special law." There are two kinds of membership in a contributory retirement system for public employees — a "[m]ember in [s]ervice" and a "[m]ember [i]nactive." G. L. c. 32, § 3 (1) (*a*) (i), (ii). A "[m]ember in [s]ervice" is "[a]ny member who is regularly employed in the performance of his duties." *Id.* at § 3 (1) (*a*) (i). A "[m]ember [i]nactive" is "[a]ny member in service who has been retired and who is receiving a retirement allowance." *Id.* at § 3 (1) (*a*) (ii).

[4]General Laws c. 217, § 5A, provides that "[e]ach register, before entering upon the performance of his official duties, in addition to the oaths prescribed by the constitution, shall take and subscribe an oath that he will faithfully discharge said duties and that he will not during his continuance in office, directly or indirectly, be interested in, or benefited by, the fees or emoluments which may arise in any suit or matter pending in either of the courts of which he is register." Further, "[e]ach register shall give bond to the state treasurer for the faithful performance of his official duties." G. L. c. 217, § 12.

County district attorney's office commenced an investigation into suspected ongoing theft of monies from cash vending machines attached to photocopiers located in the registry of deeds section of a building in Cambridge that housed the Middlesex South registry of deeds as well as the Middlesex Division of the Probate and Family Court Department and the registry of probate.[5] Initial estimates of the losses were reported to be approximately $2,000 per month over the course of eighteen months. Personnel from the registry of deeds and other witnesses identified Buonomo as someone who had been observed gaining access to several of the cash vending machines without authority or permission to do so.

As a result of the information they gathered, officers conducted video surveillance for six weeks, focusing on two geographical areas where the machines were located. On divers dates between June 23 and August 5, 2008, Buonomo was observed unlocking machines in the registry of deeds section of the building with a key, opening them, removing money, closing the machines, and then leaving the area.[6] Marked currency was used during the course of the investigation.

---

[5]The matter of which entity owns the monies from the cash vending machines is unclear. Although the contract between Ricoh Business Solutions and the Middlesex South registry of deeds for the provision of cash vending machines and photocopiers appears in the record appendix, the retirement board of Somerville (board) declined to admit the contract in evidence. According to the statement of facts in support of the application for a criminal complaint, personnel from the registry of deeds informed Sergeant Connors that "a large percentage of the money from the copy machines goes to the Commonwealth of Massachusetts and is therefore property of the Commonwealth of Massachusetts," but there is no supporting evidence to substantiate this factual assertion. The board did admit in evidence a sentencing memorandum, prepared by the Commonwealth in the wake of Buonomo's criminal convictions, which states that "[o]n a monthly basis, seventy two percent of the money collected is returned to the Registry of Deeds and the remaining percentage goes to [Ricoh Business Solutions]." However, such a statement is hearsay and not dispositive as to the owner of the monies in the cash vending machines.

[6]The cash vending machines attached to photocopiers were accessible to the general public during normal business hours. We may take judicial notice of the fact that the hours of operation of the Middlesex Division of the Probate and Family Court Department are 8 A.M. to 4:30 P.M. See Mass. G. Evid. § 201 (2014). On June 23, 24, 25, and 27, 2008, Buonomo was observed accessing the machines between 5 P.M. and 7:40 P.M. He also was observed accessing the machines on July 11 at 5 P.M.; July 13 (Sunday) at 2:38 P.M.; July 14 at 5:41 P.M.; July 23 at 5:35 P.M.; July 24 at 5:38 P.M.; July 25 at 4:52 P.M.;

Officers interviewed Buonomo at the registry of deeds on August 6 and then placed him under arrest. The following day, approximately one month before the return of indictments in the Superior Court, criminal complaints[7] issued in the District Court charging Buonomo with eighteen counts of breaking into a depository, eight counts of larceny under $250, and eight counts of embezzlement by a public officer.[8] On October 15, 2009, he pleaded guilty to all thirty-four charges in the Superior Court. Buonomo was sentenced to two and one-half years in a house of correction on the charge of breaking into a depository; he was given a concurrent sentence of two years on the charge of embezzlement by a public officer; he was placed on supervised probation for ten years to take effect from and after his house of correction sentences; and he was ordered to pay a fine of $1,000.[9]

In a letter dated November 24, 2009, the board notified Buonomo that it intended to revoke his pension pursuant to G. L. c. 32, § 15 (3) and (4). At Buonomo's request, the board held an evidentiary hearing on the matter. By decision dated January 21, 2010, the board informed Buonomo that, in light of his criminal convictions, it had voted to forfeit his pension under § 15 (3) and (4).

Pursuant to G. L. c. 32, § 16 (3) (*a*), Buonomo appealed the board's decision to the District Court, which reversed the board's decision and reinstated Buonomo's pension.[10] In a

July 30 at 6:59 and 7 P.M.; July 31 at 5:24 and 5:32 P.M.; August 1 at 4:44 and 4:51 P.M.; August 4 at 6:47 P.M.; and August 5 at 7:15 P.M.

[7]The criminal complaints are not part of the record in this case, but they were filed as part of a motion for suspension of John R. Buonomo, S.J.C. No. OE-0121 (Aug. 7, 2008). We may take judicial notice of papers filed in a related action. See *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983), and cases cited.

[8]By order dated August 19, 2008, this court, pursuant to G. L. c. 211, §§ 3 and 4, suspended Buonomo without compensation from all duties and powers as register of probate of Middlesex County. According to the retirement board of Somerville (board), Buonomo resigned from office on September 5, 2008.

[9]Because the plea colloquy is not part of the record here, we cannot ascertain the precise facts underpinning Buonomo's guilty pleas.

[10]According to Buonomo, after the board was found to be in contempt of court for refusing to resume the payment of Buonomo's retirement allowance in accordance with the District Court's order, the board retroactively paid the amount due to Buonomo, and it resumed the payment of his monthly benefits in August, 2010.

memorandum of decision and order dated May 28, 2010, a judge determined, among other things, that the board lacked a basis for revoking Buonomo's pension because the crimes of which Buonomo was convicted did not arise from or otherwise involve his work as a Somerville alderman, for which he was receiving the retirement allowance.

On July 14, 2010, the board filed a complaint for relief in the nature of certiorari pursuant to G. L. c. 249, § 4, in the Supreme Judicial Court for Suffolk County.[11] The single justice ordered the matter transferred to the Superior Court in accordance with G. L. c. 211, § 4A, for disposition. The parties proceeded to file cross motions for judgment on the pleadings. In a memorandum of decision and order dated April 27, 2012, a judge allowed Buonomo's motion, denied the board's motion, and entered a judgment affirming the decision of the District Court.

The judge stated that although it was undisputed that Buonomo's criminal convictions were directly related to his position as register of probate, they were not related to his position as a Somerville alderman. Buonomo's misconduct, the judge continued, neither occurred while he was an alderman nor involved any of his duties in that capacity. The judge said that although the enactment of G. L. c. 32, § 15 (4), broadened the range of crimes leading to forfeiture of retirement benefits, it still required a nexus between the offenses and the member's office or position. In the judge's view, because the board was unable to establish a direct link between Buonomo's criminal convictions and his position as a Somerville alderman, the board could not initiate forfeiture proceedings. Therefore, the judge concluded that the District Court judge did not commit a substantial error of law by holding that Buonomo was not required to forfeit his retirement allowance under § 15 (4). The board appealed the judge's decision, the case was entered in the Appeals Court, and we transferred it to this court on our own motion.

---

[11]General Laws c. 32, § 16 (3) (a), expressly provides that "[t]he decision of the [District] [C]ourt [in reviewing the board's determination] shall be final." It is well established that "certiorari is the only way of reviewing decisions declared final by statute." *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 134 (1997), quoting *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 614 (1961).

3. *Standard of review.* The scope of judicial review for an action in the nature of certiorari under G. L. c. 249, § 4, is limited. See *Bulger*, 446 Mass. at 173. "Certiorari allows a court to 'correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. . . . In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.' " *Id.*, quoting *Massachusetts Bay Transp. Auth.* v. *Auditor of the Commonwealth*, 430 Mass. 783, 790 (2000). See *State Bd. of Retirement* v. *Woodward*, 446 Mass. at 703-704.

4. *Discussion.* The thrust of the board's argument is that, although the Superior Court judge correctly determined that pursuant to G. L. c. 32, § 15 (4), there must be a direct link between Buonomo's office or position and his criminal convictions, the judge improperly concluded that the relevant office or position was the one from which Buonomo was receiving a retirement allowance. In the board's view, the judge's interpretation of § 15 (4) had the effect of reading into the statutory language a requirement that the Legislature did not impose. We agree.

Our analysis of G. L. c. 32, § 15 (4), is guided by the familiar principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001), and cases cited. Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985); *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942). "For purposes of statutory construction, G. L. c. 32,

§ 15 (4), is considered to be penal and, therefore, its language must be construed narrowly, not stretched to accomplish an unexpressed result." *Bulger*, 446 Mass. at 174-175. See *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. 1, 3 n.3 (1996); *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 686-687 (1986).

We begin by considering whether Buonomo's multiple criminal convictions involved violations of the laws applicable to his office or position, namely, that of register of probate. Then, we proceed to consider whether he nonetheless is entitled to receive a retirement allowance from a different office or position, namely, that of Somerville alderman.

The scope of G. L. c. 32, § 15 (4), was enunciated in *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. at 4, where this court said that "[t]he substantive touchstone intended by the General Court is criminal activity connected with the office or position." Section 15 (4) is not limited to "highly specialized crimes addressing official actions." *Id.* Rather, by using a broad phrase — "violation of the laws applicable to his office or position" — to describe the precondition to forfeiture, "the intent clearly is to avoid having the precise form of the criminal enforcement action make a difference with respect to the pension forfeiture issue." *Id.*, quoting G. L. c. 32, § 15 (4). When considering whether the forfeiture provision has been triggered, the facts of each case are examined for "a direct link between the criminal offense and the member's office or position." *Gaffney* v. *Contributory Retirement Appeal Bd.*, *supra* at 5. In *Gaffney*, such a direct link existed because the member, the superintendent of the Shrewsbury water and sewer department, stole monies from that department. See *id.* at 2-4. We are mindful that "the General Court did not intend pension forfeiture to follow as a sequelae of any and all criminal convictions. Only those violations related to the member's official capacity were targeted." *Id.* at 5.

In *Bulger*, a member of the State employees' retirement system who was granted a superannuation retirement from his position as clerk-magistrate of the Boston Juvenile Court subsequently pleaded guilty to two counts of perjury and two counts of obstruction of justice in Federal District Court. See *Bulger*, 446 Mass.

at 170-171. This court said that when the member committed such crimes, he violated the "fundamental tenets" of the Code of Professional Responsibility for Clerks of the Courts (the code), S.J.C. Rule 3:12, as amended, 427 Mass. 1322 (1998), and of his oath of office. *Bulger, supra* at 179. We further said that "[t]he nature of [the member's] particular crimes [could not] be separated from the nature of his particular office when what [was] at stake [was] the integrity of our judicial system." *Id.* at 180. Consequently, we concluded that the member's convictions involved "violation[s] of the laws applicable to his office or position," G. L. c. 32, § 15 (4), such that forfeiture of his pension was statutorily required. *Bulger, supra.* Contrast *Retirement Bd. of Maynard* v. *Tyler*, 83 Mass. App. Ct. 109, 112-113 (2013) (member not required to forfeit pension after convictions relating to sexual abuse of young boys where no direct link between criminal offenses and position as fire fighter); *Scully* v. *Retirement Bd. of Beverly*, 80 Mass. App. Ct. 538, 543 (2011) (member not required to forfeit pension after convictions of possession of child pornography on home computer where no direct link between criminal offenses and position at public library); *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 654-655 (2010), *S.C.*, 465 Mass. 801 (2013) (member not required to forfeit pension after conviction of indecent assault and battery of daughter where no direct link between criminal offense and position as custodian).

The office of register of probate is one created and defined by statute. See G. L. c. 217, §§ 4, 5A, 15. The duties of a register of probate are "in the main concerned with administering justice." *Opinion of the Justices*, 300 Mass. 596, 598 (1938). The high standards to which registers of probate are held are plainly enunciated in the code, which is applicable to registers. See S.J.C. Rule 3:12, Canon 1, as appearing in 407 Mass. 1301 (1990). The purpose of the code is to "define norms of conduct and practice appropriate to persons serving in the positions covered by the [c]ode and thereby to contribute to the preservation of public confidence in the integrity, impartiality, and independence of the courts." *Id.* The code imposes on an individual covered by its provisions "a significant responsibility for upholding the integrity of the judicial system, for promoting

public confidence in the administration of justice, for honoring the public trust placed in such office, for avoiding the appearance of any impropriety in his activities, and for fulfilling the mandates of the oath of office." *Bulger*, 446 Mass. at 177. The "laws" applicable to the office of register of probate include the code because "it establishes the very standards governing the norms of conduct and practice associated with such office." *Id.* at 177-178. See *Opinion of the Justices*, 375 Mass. 795, 813 (1978) (Supreme Judicial Court has "the authority by rule to establish standards of conduct for judicial employees and officials"); *Berkwitz, petitioner*, 323 Mass. 41, 47 (1948) (rules of court "have the force of law and are just as binding on the court and the parties as would be a statute").

Canon 2 of S.J.C. Rule 3:12, as appearing in 407 Mass. 1301 (1990), states that a register "shall comply with the laws of the Commonwealth." By pleading guilty to eighteen counts of breaking into a depository, eight counts of larceny under $250, and eight counts of embezzlement by a public officer, Buonomo violated Canon 2, and, therefore, he violated the laws applicable to the office of register of probate. Buonomo's commission of such criminal offenses, which was facilitated by his access and proximity to the cash vending machines, compromised the integrity of and public trust in the office of register of probate.

Having concluded that Buonomo was convicted of criminal offenses "involving violation[s] of the laws applicable to his office or position," G. L. c. 32, § 15 (4), we turn to the matter whether Buonomo was required to forfeit his pension where the office to which his criminal convictions related was not the same as the office from which he was receiving a retirement allowance. In Buonomo's view, because his criminal convictions were unrelated to the position from which he earned a pension, forfeiture was not required. We disagree.

The language of G. L. c. 32, § 15 (4), is unequivocal. It provides that "*[i]n no event* shall *any member* after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance under the provisions of [§§ 1-28]"[12] (emphasis

---

[12]Because the pension forfeiture language in G. L. c. 32, § 15 (4), pertains to "*any* member," it applies to Buonomo as an inactive member of the Somer-

added). The statute does not say that the office or position whose laws were violated be the same as the one from which the member is receiving a retirement allowance. There simply is no such limiting language in § 15 (4). We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design. See *General Elec. Co.* v. *Department of Envtl. Protection*, 429 Mass. 798, 803 (1999); *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 8 (1998). By reading the language of § 15 (4) as requiring pension forfeiture only when a member violates the laws applicable to the position from which that member is receiving a retirement allowance, we would be unduly narrowing the circumstances that lead to pension forfeiture. Such a consequence would be contrary to what the Legislature intended when, in response to our decision in *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684 (1986),[13] it enacted St. 1987, c. 679, § 47, which inserted G. L. c. 32, § 15 (4), providing for pension forfeiture in a broader range of circumstances than previously had been permitted. See *Gaffney* v. *Contributory Retirement Appeal Bd.*, 423 Mass. at 3. By pleading guilty to eighteen counts of breaking into a depository, eight counts of larceny under $250, and eight counts of embezzlement by a public officer, Buonomo violated the laws applicable to the office of register of probate, a position of public trust, and thereby forfeited his entitlement to *any* retirement allowance under G. L. c. 32, §§ 1-28.

5. *Conclusion.* The judgment is reversed, and the case is remanded to the Superior Court where a new judgment shall enter reversing the judgment of the District Court, affirming the

---

ville retirement system (emphasis added). See note 3, *supra*. If the Legislature had wanted to limit the applicability of this forfeiture provision to active members, it would have used the words "any member in service" instead of "any member."

[13]In *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687-688 (1986), this court concluded that the Legislature intended G. L. c. 32, § 15 (3A), inserted by St. 1982, c. 630, § 20, to require a forfeiture of a public employee's pension only if the employee was convicted of one of two specific State crimes. We construed the statute narrowly because of its penal character. See *id.* at 686-687. Thus, a Federal conviction for a violation of the so-called "Hobbs Act," 18 U.S.C. § 1951(a) (1982), did not trigger pension forfeiture. See *id.* at 687-688.

decision of the board, and remanding to the District Court for further proceedings in accordance with this opinion.[14]

*So ordered.*

---

[14]The board has requested an order of restitution for any retirement benefits paid to Buonomo subsequent to the original order of forfeiture that was issued by the board. See G. L. c. 32, § 20 (5) (*b*) (board of contributory retirement system has such powers and duties as are necessary to comply with provisions of G. L. c. 32, §§ 1-28). See also Rep. A.G., Pub. Doc. No. 27, at 152, 156 (1979) ("In cases in which retirement benefits have been received in violation of any provision of c. 32, it is therefore the duty of the [b]oard to take remedial action," which may include recoupment of improperly received benefits).