NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11493


RONALD T. GARNEY  vs.  MASSACHUSETTS TEACHERS' RETIREMENT SYSTEM.



Worcester.     April 10, 2014. - August 18, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.[1]


Retirement.  Public Employment, Forfeiture of retirement benefits.  School and School Committee, Retirement benefits.



Civil action commenced in the Superior Court Department on January 14, 2010.

The case was heard by John S. McCann, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Robert G. Fabino (James H. Salvie, Special Assistant Attorney General, with him) for the defendant.
Michael C. Donahue for the plaintiff.


_____

[1] Chief Justice Ireland participated in the deliberation on this case prior to his retirement.

CORDY, J.   This case concerns the scope of the pension forfeiture requirement of G. L. c. 32, § 15 (4), and specifically whether forfeiture is warranted where a teacher has engaged in criminal activity that endangers children generally, but does not involve the students whom he taught, the school district for which he worked, or the use of his status as a teacher.   The plaintiff, Ronald T. Garney, a ninth grade science teacher, was arrested in 2006 for the purchase and possession of child pornography.   Shortly after his arrest, he received notice that he would be dismissed from his position for conduct unbecoming a teacher and resigned prior to his dismissal.   He subsequently pleaded guilty to purchasing and possessing child pornography.   In August, 2007, when he reached retirement age, Garney filed a retirement application with the defendant, the Massachusetts Teachers' Retirement System (MTRS), and received retirement benefits until 2009, when the MTRS board (board) issued a decision concluding that Garney's benefits were forfeited by operation of G. L. c. 32, § 15 (4), due to his convictions.[2]   A District Court judge affirmed the board's decision, and Garney petitioned for certiorari review in the Superior Court pursuant to G. L. c. 249, § 4.   A Superior Court

---

[2] The board also concluded that Ronald T. Garney did not have a right to a superannuation retirement allowance under G. L. c. 32, § 10 (1), because of his convictions.  This issue was disposed of during the Superior Court proceedings and is not before us.  See note 6, infra.

judge reversed the decision of the District Court and vacated the decision of the board. MTRS appealed, and we transferred its appeal to this court on our own motion.

Although cognizant of the severity of the offenses of which Garney was convicted, we conclude that on the specific facts of this case, those offenses neither directly involved his position as a teacher nor contravened a particular law applicable to that position, and therefore did not come within the forfeiture provision of G. L. c. 32, § 15 (4). Consequently, we affirm the decision of the Superior Court judge allowing Garney's motion for judgment on the pleadings and vacating the board's decision otherwise.

Background. For over twenty years, Garney worked as a ninth grade science teacher and served as a coach and referee at sporting events for the Amherst-Pelham regional school district (district).[3] In November, 2004, the office of the United States Immigration and Customs Enforcement identified Garney as a purchaser of child pornography in the course of an investigation into Web sites that sold such illicit material.[4] It informed the

---

[3] Garney taught in the Amherst-Pelham regional school district from 1984 until his resignation in 2006. In the early 1970s, he worked briefly for the Hingham and Bridgewater public schools.

[4] Garney had been identified through the electronic mail (e-mail) address and credit card numbers he submitted to the Web

Amherst police department, which monitored Garney's postal mail, electronic mail (e-mail) address, and credit card activity until November 28, 2006, when it executed a warrant to search Garney's apartment.  There, police found images of child pornography on his home computer, as well as several hand-labeled compact discs and video recordings, on either videotape cassettes or digital video discs, containing child pornography.

Garney admitted to viewing child pornography since as early as 1994, to purchasing and possessing child pornography, and to joining several child pornography Web sites as early as 2000 or 2001.  He indicated that he had renewed his membership to one such Web site in the weeks prior to his arrest and had last visited one of the Web sites the day prior to his arrest. Although Garney occasionally used an e-mail address issued to him by the Department of Elementary and Secondary Education to access the Web sites, there were no other connections to his position as a teacher.  He accessed and stored the illicit material on his home computer, purchased it using his own funds, and did not possess or view material that depicted any of his students or otherwise involve them.[5]

_____

sites, and by the unique Internet Protocol (IP) address of his computer.

[5] At the time of Garney's plea, twenty-one children in the photographs and video recordings had been identified.  The children ranged from four to fifteen years of age at the time

As a result of the investigation and Garney's arrest for the purchase and possession of child pornography, the superintendent of the school district informed Garney that the district intended to dismiss him for conduct unbecoming a teacher, pursuant to G. L. c. 71, § 42. Two days prior to the effective date of his dismissal, on December 13, 2006, Garney resigned his position.

Garney was thereafter indicted and, on December 20, 2007, pleaded guilty to eleven counts of purchasing and possessing child pornography, in violation of G. L. c. 272, § 29C. He was sentenced to from two and one-half to three years in a house of correction, followed by probation, registration as a sex offender, and other penalties.

On August 7, 2007, after his arrest but prior to his plea and sentencing, Garney filed a retirement application with MTRS. His retirement became effective on August 22, 2007, at which time he had twenty-two years and three months of retirement credit, and he began to receive a gross monthly retirement benefit of $2,393.78. On May 22, 2008, after his convictions, MTRS notified Garney that it was initiating proceedings to consider whether his convictions triggered the operation of

the material was created, and were known to be located in a variety of jurisdictions, primarily outside the United States. None were from the school or the school district where Garney taught.

G. L. c. 32, § 15 (4), which requires forfeiture of public employee retirement benefits "after final conviction of a criminal offense involving violation of the laws applicable to [the employee's] office or position."

After receiving recommended findings of fact from a hearing officer, the board concluded on March 27, 2009, that Garney's retirement was forfeited by operation of both G. L. c. 32, §§ 10 (1) and 15 (4).[6] The board determined that there was "a direct link between Mr. Garney's employment and his possession of child pornography," in part because he used an e-mail address provided by the Department of Elementary and Secondary Education, and that therefore he met the requirements of G. L. c. 32, § 15 (4), warranting forfeiture.

On Garney's petition for review pursuant to G. L. c. 32, § 16 (3), a District Court judge affirmed the board's decision. The judge observed that teachers occupy a position of special trust, see Perryman v. School Comm. of Boston, 17 Mass. App. Ct. 346, 349 (1983), and that the crime Garney committed directly contravened his duty to protect the welfare of children.

---

[6] General Laws c. 32, § 10 (1), provides a right to a superannuation retirement allowance for certain public employees but prohibits that allowance where an employee "is removed or discharged from his office or position" with "moral turpitude on his part."  This allowance is permitted, however, if the employee "resigns or voluntarily terminates his service," as Garney did.  See id.  During the subsequent Superior Court proceedings, the parties agreed that G. L. c. 32, § 10 (1), is inapplicable, and this ground is not raised on appeal.

Therefore, the requisite link between his criminal convictions and his public position was established, such that his crimes "involv[ed] violation of the laws applicable to his office or position."  See G. L. c. 32, § 15 (4).  Relying on State Bd. of Retirement v. Bulger, 446 Mass. 169, 175 (2006), the judge noted that the private nature of the crime, and the fact that it did not involve any school resources or any of Garney's students,[7] did not call for a different result where the welfare of children is a core tenet of the teaching position, and the crime that Garney committed was directly at odds with this tenet.

Garney then petitioned the Superior Court for certiorari pursuant to G. L. c. 249, § 4.  A Superior Court judge allowed Garney's motion for judgment on the pleadings, reversed the decision of the District Court judge, and vacated the decision of the board that Garney's pension was forfeited under G. L. c. 32, § 15 (4).  Relying on our decisions in Bulger, 446 Mass. at 171, and Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 4-5 (1996), the judge reasoned that, although Garney's crimes were severe and undoubtedly warranted both criminal

---

[7] Although the judge observed that Garney occasionally used an e-mail address issued to him by the Department of Elementary and Secondary Education in accessing the Web sites containing child pornography, he otherwise noted that there was no evidence that Garney used school funds, engaged in the activity at school, used school computers, or "created or disseminated child pornography or involved any students from the school district in his illegal behavior or displayed any illicit material to them."

prosecution and dismissal from his position, there was not a direct link between his convictions and his position as a teacher, because his criminal offenses did not involve the use of school resources and he did not use his position as a teacher to facilitate his crime. Further, the judge rejected the District Court judge's interpretation of Bulger, supra at 175, 179-180, and the argument of MTRS that because teachers fill a special societal role, a conviction of possession of child pornography necessarily violates the laws applicable to that role. MTRS appealed, and we transferred the case from the Appeals Court on our own motion to clarify the scope of our decision in Bulger, supra at 178-180.

Discussion. Our review of the board's decision pursuant to G. L. c. 249, § 4, is a limited one. See Bulger, 446 Mass. at 173. We may "correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff. . . . [and] may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public . . . ." Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988).

The parties' dispute pertains to the scope of G. L. c. 32, § 15 (4), which directs the forfeiture of a pension following

certain criminal conduct by a member of a contributory retirement system for public employees.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 663 (2014).  Section 15 (4) provides in relevant part:  "In no event shall any member after final conviction of a criminal offense involving violation of the laws applicable to his office or position, be entitled to receive a retirement allowance . . . ."

Where we must interpret the terms of a statute, we look "to the intent of the Legislature ascertained from all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Hanlon v. Rollins, 286 Mass. 444, 447 (1934), and cases cited.  See Sullivan v. Brookline, 435 Mass. 353, 360 (2001).  Because G. L. c. 32, § 15, involves the forfeiture of property, it is penal in nature, and we must draw its limits narrowly, so as not to exceed the scope or reach of the penalty as contemplated by the Legislature.  Bulger, 446 Mass. at 174-175.  See Gaffney, 423 Mass. at 3 & n.3; Collatos v. Boston Retirement Bd., 396 Mass. 684, 686-687 (1986) (General Laws c. 32, § 15 "imposes a penalty on employees" and "enforce[s] the criminal law by suspending the sword of retirement benefits forfeiture over those employees who otherwise might be tempted to transgress").

We have observed previously that "[t]he substantive touchstone [of G. L. c. 32, § 15 (4),] intended by the General Court is criminal activity connected with the office or position. . . . [T]he General Court did not intend pension forfeiture to follow as [an automatic consequence] of any and all criminal convictions.  Only those violations related to the member's official capacity were targeted.  Looking to the facts of each case for a direct link between the criminal offense and the member's office or position best effectuates the legislative intent of § 15 (4)" (emphasis added).  Gaffney, 423 Mass. at 4-5.  This "direct link" requirement "does not mean that the crime itself must reference public employment or the employee's particular position or responsibilities," Maher v. Justices of the Quincy Div. of the Dist. Court Dep't, 67 Mass. App. Ct. 612, 616 (2006), S.C., Maher v. Retirement Bd. of Quincy, 452 Mass. 517 (2008), cert. denied, 556 U.S. 1166 (2009), or that the crime necessarily must have been committed at or during work.  Durkin v. Boston Retirement Bd., 83 Mass. App. Ct. 116, 119 (2013).  However, where the crime itself does not reference public employment or bear a direct factual link through use of the position's resources, there must be some direct connection between the criminal offense and the employee's official capacity by way of the laws directly applicable to the public position.  See Gaffney, supra at 5.

It is clear that the criminal offenses for which Garney was convicted neither referenced public employment nor bore a direct factual link to his teaching position.  See G. L. c. 279, § 29C. Garney committed his crimes outside of school, without using school resources or otherwise using his position to facilitate his crimes, and without involving students in his illicit activities.[8]  In numerous cases, this lack of a factual link has been fatal to the retirement board's claim that forfeiture is warranted.  See, e.g., Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 113 (2013) (no forfeiture where fire fighter sexually abused boys because offenses were "personal in nature, occurring outside the firehouse while [fire fighter] was not on duty," and "no evidence that [fire fighter] used his position, uniform, or equipment for the purposes of his indecent acts"); Scully v. Retirement Bd. of Beverly, 80 Mass. App. Ct. 538, 543, 545 (2011) (no forfeiture where public library employee convicted of possession of child pornography because offenses occurred at home on personal computer, and employee did not use position to facilitate crime); Herrick v. Essex Regional Retirement Bd., 77 Mass. App. Ct. 645, 646-647, 654 (2010) (no

--------

[8] Although Garney did use an e-mail address issued by the Department of Elementary and Secondary Education to access at least some of the pornography Web sites, this fact does not appear to have persuaded either the District Court judge or the Superior Court judge that there was a sufficient factual link between his criminal offenses and his teaching position.  We agree.

forfeiture where housing authority custodian convicted of indecent assault and battery of daughter because offense not committed on public property or against anyone who resided there, and otherwise had no connection to custodian's official position).  See also Massachusetts Teachers' Retirement Bd. vs. Lambert, Mass. Super. Ct., No. SUCV2005-02540B, slip op. at 1-2, 9 (Mar. 26, 2007) (Superior Court judge held forfeiture not warranted where teacher convicted of possession of child pornography because offense committed at home, on personal computer, without involvement of any students or children known to teacher).  Contrast Gaffney, 423 Mass. at 4, 5 (forfeiture where superintendent of town water and sewer department convicted of larceny because superintendent tasked with managing budget and stole from own department); Durkin, 83 Mass. App. Ct. at 116-117, 119 (forfeiture where police officer convicted of assault and battery by means of dangerous weapon for shooting another officer with department-issued firearm while intoxicated off duty); Maher, 67 Mass. App. Ct. at 616-617 (forfeiture where city inspector convicted of breaking into city hall and stealing documents from own personnel file because "multiple, direct links" between offenses and position).

Relying on our decision in Bulger, 446 Mass. at 179-180, MTRS argues that, despite the lack of a factual connection between Garney's crimes and his public position, there is a

direct link here because the position of a teacher is one that holds a special public trust, and Garney's criminal conduct of possessing child pornography strikes at the "heart" of this position by violating one of its "fundamental tenets," as embodied in the professional standards for teachers.  As a result, MTRS contends, the board and the District Court judge correctly concluded that forfeiture was warranted.  Garney asserts that creating a distinct forfeiture category for teachers because of their special obligations to society would expand G. L. c. 32, § 15 (4), "to accomplish an unexpressed result," Bulger, supra at 175, and accordingly asks us to affirm the Superior Court judge's determination that there was no direct link between Garney's conduct and his position.  We conclude that the fact that Garney's position is one of special public trust, and that criminal conduct of the type committed by Garney violates that trust, is insufficient in and of itself to warrant forfeiture under G. L. c. 32, § 15 (4).  Rather, the conduct must either directly involve the position or be contrary to a central function of the position as articulated in applicable laws, thereby creating a direct link to the position.

1.  Special public trust.  Undoubtedly, teachers hold a position of special public trust; they must impart "the basic values of our society" to students and ensure their well-being in the process.  Perryman, 17 Mass. App. Ct. at 351.  See Brum

v. Dartmouth, 428 Mass. 684, 709 (1999) (Ireland, J., concurring); Dupree v. School Comm. of Boston, 15 Mass. App. Ct. 535, 538 (1983). Indeed, "conduct consistent with this special trust is an obligation of the employment." Perryman, supra at 349. It is for this reason that teachers must demonstrate "sound moral character" to acquire teacher certification, G. L. c. 71, § 38G, and may be suspended or dismissed from service where they engage in "conduct unbecoming a teacher," G. L. c. 71, §§ 42 and 42D, or have been convicted "of a crime involving moral turpitude" or that otherwise "discredits the profession" or demonstrates a lack of "good moral character," 603 Code Mass. Regs. § 7.15(8)(a)(1)(c) (2012). However, these parameters for entering or remaining in the profession are not the same as the standard for forfeiting a pension to which an employee has contributed and that he or she earned over the course of many years of public service. See Bulger, 446 Mass. at 178-179 ("standard for pension forfeiture based on dereliction of duty is more narrow and specific" than standard for dismissal, and not every offense implicating norms and expectations of position necessarily violates applicable law and requires forfeiture); Durkin, 83 Mass. App. Ct. at 119 n.5 ("not every off-duty illegal act qualifies" for forfeiture). See also Gaffney, 423 Mass. at 3 & n.3 (language of G. L. c. 32,

§ 15 [4], must be construed narrowly because of its penal character).

In advocating for a reading of G. L. c. 32, § 15 (4), that requires forfeiture where a teacher's criminal conduct violates the special public trust placed in teachers, MTRS misinterprets Bulger, 446 Mass. at 176-180, as adopting a broader reading of G. L. c. 32, § 15 (4), than the narrow language of the statute permits. Our decision in Bulger, supra, did not call for forfeiture whenever a special public trust is violated. Rather, the court concluded that forfeiture was warranted where a clerk-magistrate's specific criminal conduct, perjury and obstruction of justice, was directly contrary to the most fundamental tenets of his position, to ensure truth-telling in judicial matters and proceedings and to uphold the integrity of the judicial system. Id. These tenets and responsibilities were embodied in the Code of Professional Responsibility for Clerks of the Courts, S.J.C. Rule 3:12, as amended, 427 Mass. 1322 (1998) (code), a law applicable to his position.[9] See Bulger, supra at 176-177. See

---

[9] In State Bd. of Retirement v. Bulger, 446 Mass. 169, 169, 171 (2006), a clerk-magistrate of the Boston Juvenile Court was convicted of perjury and obstruction of justice in Federal court during grand jury investigations of alleged criminal offenses committed by his brother, James "Whitey" Bulger, and others, and of criminal offenses related to harboring and concealing James Bulger. In assessing whether the clerk-magistrate had violated a law applicable to his office in engaging in this criminal conduct, the court first identified the central functions of the clerk-magistrate position underlying its daily tasks: to

also Berkwitz, petitioner, 323 Mass. 41, 47 (1948) (court rules have force of law).

We reached a similar conclusion in a more recent case, Buonomo, 467 Mass. at 670-671.  There, we concluded that a register of probate violated the laws applicable to his office by committing larceny, embezzlement, and associated crimes, because the code requires clerks and registers "to contribute to the preservation of public confidence in the integrity, impartiality, and independence of the courts" and to "comply with the laws of the Commonwealth."  S.J.C. Rule 3:12, Canons 1

---

administer oaths, thereby ensuring truth-telling; to ensure "the effective functioning of the courts"; and to preserve the integrity of judicial processes.  See id. at 176-177, quoting Commonwealth v. Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't, 439 Mass. 352, 359 (2003).

The court observed that the Code of Professional Responsibility for Clerks of the Courts (code), in "enunciating the high standards to which clerks are held," forbids a broader range of conduct than that which merits forfeiture.  Bulger, 446 Mass. at 177 & n.6, 178.  Among the code's requirements are that clerk-magistrates "comply with the laws of the Commonwealth [and] rules of the court" and "conduct personal affairs in such a way as not to cause public disrespect for the court and the judicial system."  S.J.C. Rule 3:12, Canons 2 and 4(B), as appearing in 407 Mass. 1301 (1990).  After considering the relationship between the code and the clerk-magistrate's crimes, the court concluded that his specific criminal offenses constituted an identifiable "violation of [a] law[] applicable to [the] office or position," G. L. c. 32, § 15 (4), because they contradicted the "fundamental tenets of the code and of his oath of office."  Bulger, supra at 179-180.  His crimes were so connected to the core function of his position in preserving the integrity of the judicial system and ensuring truth-telling that they could not be "separated from the nature of his particular office."  Id. at 180.

and 2, as appearing in 407 Mass. 1301 (1990). His conduct, we determined, "compromised the integrity of and public trust in the office of register of probate" and therefore explicitly violated the core function of his position as embodied in the provisions of the code. See Buonomo, supra at 671.

The narrow basis for our holdings in Bulger and Buonomo demonstrates that G. L. c. 32, § 15 (4), requires something more specific than a violation of a special public trust in the particular public position. The plain language of G. L. c. 32, § 15 (4), clearly requires a direct link between the criminal offense and a violation of the laws applicable to the office. Gaffney, 423 Mass. at 4-5. See Bulger, 446 Mass. at 179 (where member is "convicted of a criminal offense that does not involve any violation of the laws applicable to his office or position . . . the member does not forfeit his entitlement to a retirement allowance"). Criminal conduct that is merely inconsistent with a concept of special public trust placed in the position or defiant of a general professional norm applicable to the position, but not violative of a fundamental precept of the position embodied in a law applicable to it, may be adequate to warrant dismissal, but it is insufficient to justify forfeiture under G. L. c. 32, § 15 (4). See Bulger, supra at 179-180; Gaffney, 423 Mass. at 4-5. See also Tyler, 83

Mass. App. Ct. at 109-110, 113; Scully, 80 Mass. App. Ct. at 543, 545; Herrick, 77 Mass. App. Ct. at 654.

Were we to hold otherwise, and conclude that where a teacher's criminal conduct violates the special public trust placed in teachers, forfeiture is warranted, we would permit forfeiture nearly any time a teacher engages in criminal conduct. This would expand the parameters of G. L. c. 32, § 15 (4), well beyond what the Legislature intended for it to encompass. Cf. Tyler, 83 Mass. App. Ct. at 112 (considerations of fire fighter's general obligation to protect the public "while understandable, are so broad . . . as to engulf nearly every public official, especially police officers and fire fighters, convicted of any crime. The reach of the statute as currently written is not so broad"). Cf. also Lambert, Mass. Super. Ct., No. SUCV2005-02540B, slip op. at 9 (application of G. L. c. 32, § 15 [4], cannot extend to any "violation of broad standards of fitness to serve as a teacher" because this would expand scope beyond that intended by Legislature, as "[v]irtually every criminal conviction of a teacher puts in question the soundness of his moral character and fitness for the position"). Our reading of the statute is consistent with

the mandate that we interpret the statute narrowly.  See Bulger, 446 Mass. at 174-175.[10]

2.  Laws applicable to teaching position.  We turn next to whether Garney's conduct violated any laws applicable to his position as a teacher, and conclude that it did not.

At its core, the function of a teacher is that of educator. See Webster's Third New International Dictionary 723, 2346 (1993) (defining "educate" as "to bring up" or "to train by formal instruction and supervised practice"; defining "teacher" as "one that teaches or instructs"; and defining "teach" as "to show, instruct," "to cause to know a subject," and "to impart the knowledge of").  Teachers must give effect to the mandate embodied in Part II, c. 5, § 2, of the Constitution of the Commonwealth, that "the magistrates and Legislatures of this Commonwealth . . . provide education in the public schools." McDuffy v. Secretary of the Executive Office of Educ., 415 Mass. 545, 621 (1993).  This mandate derives from the belief that an educated people is "essential to the preservation of . . . [a]

---

[10] As noted above, the penal character of the forfeiture required by G. L. c. 32, § 15 (4), compels us to interpret the statutory language narrowly.  See Gaffney v. Contributory Retirement Appeal Bd., 423 Mass. 1, 3 & n.3 (1996).  If the Legislature desires a different result, it must state so clearly in amended legislation.  See Retirement Bd. of Somerville v. Buonomo, 467 Mass. 662, 672 (2014) (Legislature expanded applicability of forfeiture to "broader range of circumstances" with St. 1987, c. 679, § 47, in response to Collatos v. Boston Retirement Bd., 396 Mass. 684, 687-688 [1986], which interpreted predecessor statute narrowly).

democratic State."  Id. at 561.  Since 1789, teachers have been instructed to "exert their best endeavors to impress on the minds of children and youth committed to their care and instruction the principles of piety and justice[,] . . . a sacred regard for truth," and other virtues, such as humanity, sobriety, moderation, and temperance, and "to point out to [students] the evil tendency of the opposite vices."  G. L. c. 71, § 30.  See McDuffy, supra at 594 & n.66, quoting St. 1789, c. 19, § 4.

Private possession of child pornography by a secondary school teacher does not directly contravene this central function where there is no indication that this possession compromised the safety, welfare, or learning of the children whom he was tasked with teaching or impeded his ability to provide adequate educational lessons to his students.  As reprehensible as Garney's crimes may be, the entirely private nature of his conduct does not call into question the effectiveness of the educational system of the Commonwealth.

The central function of the teaching position is buttressed by additional, important principles, the violation of which may be a ground for dismissal from a teaching position, see G. L. c. 71, § 42, but whose fulfilment is not so central to the role of the teacher in ensuring students' education that a violation justifies forfeiture of retirement benefits.  For example,

teachers are expected to "[u]nderstand[ ] [their] legal and moral responsibilities" and "[u]nderstand[ ] legal and ethical issues as they apply to responsible and acceptable use of the Internet and other resources."  See 603 Code Mass. Regs. § 7.08(2)(e)(1), (7) (2005).[11]  Even if Garney's criminal offenses suggest a lack of understanding of these ethical obligations and responsibilities, his personal possession of pornography, without any known impact on his teaching or his students, cannot be said to violate the core function of teaching so as to create the direct link required between conduct and office for forfeiture under G. L. c. 32, § 15 (4). The critical alignment of crime and office through an applicable law, as required by this narrow statute, is simply not present.[12]

---

[11] Although this older version of the regulations was in place at the time of Garney's convictions and the board's decision, a more recent version of 603 Code Mass. Regs. § 7.08(2) (2014) sets forth four categories of professional standards for teachers:  curriculum, planning, and assessment; teaching all students; family and community engagement; and professional culture.  This final category articulates the expectation that teachers will "[p]romote[ ] the learning and growth of all students through ethical, culturally proficient, skilled, and collaborative practice."  603 Code Mass. Regs. § 7.08(2)(d).

[12] This is in stark contrast to the relationship between the criminal offenses and the core responsibilities of the position in Bulger, 446 Mass. at 175-180.  There, the clerk-magistrate's convictions of perjury and obstruction of justice struck at the very core of the role of the clerk-magistrate and compromised the integrity of the judicial system; this close nexus is what warranted forfeiture.  See id. at 179-180.

In this respect, a teacher's conduct that fails to reach inside the schoolhouse doors does not satisfy the standard for forfeiture under G. L. c. 32, § 15 (4). For this reason, MTRS's claim that Garney's status as a mandated reporter of child abuse provides the requisite connection for forfeiture also must fail. As a mandated reporter, G. L. c. 119, § 21, a teacher who, "in his [or her] professional capacity, has reasonable cause to believe that a child is suffering physical or emotional injury resulting from [abuse, neglect, or sexual abuse] . . . shall immediately communicate with the [Department of Children and Families] . . . [and] file a written report . . . detailing the suspected abuse or neglect" or "notify the person or designated agent in charge of [the school]." G. L. c. 119, § 51A (a). See Matter of a Grand Jury Investigation, 437 Mass. 340, 352-353 (2002). The report filed must contain the names and addresses of the child and the adults responsible for the child's care, as well as the child's age, sex, extent of injuries or abuse, and other relevant information. G. L. c. 119, § 51A (d).

Although mandated reporters may report suspected abuse or neglect of which they become aware at any time, the duty to report applies only to information learned in one's professional capacity, in this case while Garney was fulfilling his teaching and coaching responsibilities. G. L. c. 119, § 51A (a) (duty applies when mandated reporter learns of abuse or neglect "in

his [or her] professional capacity").  Not only did Garney not know the identities of the children in the pornography and therefore did not have the requisite information, but he also did not learn of this abuse in his professional capacity.  As Garney's criminal conduct was independent of his role as a teacher, he was not required under the plain meaning of G. L. c. 119, § 51A, to report this conduct.[13,14]

---

[13] The mandated reporter statute was clearly intended to ensure the immediate care and protection of identifiable endangered children within the Commonwealth, as the statutory scheme instructs the Department of Children and Families (department) to investigate reports promptly and in person.  See Covell v. Department of Social Servs., 439 Mass. 766, 772 (2003); B.K. v. Department of Children & Families, 79 Mass. App. Ct. 777, 782 (2011) (General Laws c. 119, § 51A, intended to provide department with information to protect children's health and safety before harm occurs); Cooney v. Department of Mental Retardation, 52 Mass. App. Ct. 378, 382-383 (2001) (social policy of G. L. c. 119, § 51A, is "to encourage certain professionals to report known or suspected abuse so that those who are vulnerable and at risk . . . may be protected").  Investigation into the well-being of the child subjects of pornography is likely beyond the investigative and protective functions of the department where, as here, the identities of the majority of the children are unknown, and those who had been identified at the time of Garney's plea and whose locations were known were located in other, primarily foreign, jurisdictions.

[14] We agree with the Massachusetts Teachers' Retirement System that a particular public position's status as a mandated reporter suggests that the position may hold a special public trust.  See Retirement Bd. of Maynard v. Tyler, 83 Mass. App. Ct. 109, 114-115 (2013) (Graham, J., dissenting) (mandated reporter status is "[i]llustrative of the special trust conferred on firefighters and [emergency medical technicians]").  However, we have concluded that a violation of the special public trust placed in teachers is not determinative to the analysis under G. L. c. 32, § 15 (4).

In sum, we recognize that Garney's possession of child pornography, in violation of G. L. c. 279, § 29C, was violative of children's safety, rights, and dignity overall, and further violative of the special public trust placed in teachers to ensure the welfare of children in the Commonwealth. See G. L. c. 71, § 30; St. 1997, c. 181, §§ 1, 2 (enacting G. L. c. 279, § 29C). Nonetheless, there is no reference to public employment in the criminal statute under which Garney was convicted, no direct factual link between Garney's conduct and his teaching position, and no violation of any identifiable law applicable to that position. Consequently, we must conclude that forfeiture of Garney's retirement benefits under G. L. c. 32, § 51 (4), was not warranted.

Conclusion. We affirm the decision of the Superior Court reversing the decision of the District Court and vacating the decision of the board.

Judgment affirmed.